1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9   ANTHONY D. RAWLS,                    1:09-CV-01169 OWW SMS HC

10                    Petitioner,        FINDINGS AND RECOMMENDATION
                                          REGARDING PETITION FOR WRIT OF
11        v.                              HABEAS CORPUS

12

13  SUSAN FISCHER, et al.,

14                    Respondents.
    _____/

15

16        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17  pursuant to 28 U.S.C. § 2254.

                        ### PROCEDURAL BACKGROUND

18        Petitioner is currently in the custody of the California Department of Corrections and

19  Rehabilitation serving an indeterminate sentence of twenty-five years to life for his 1985

20  conviction in Los Angeles County Superior Court for first degree murder. (Pet. at 2.)

21        On March 6, 2007, Petitioner's second parole suitability hearing was held before the

22  California Board of Parole Hearings ("Board") to determine his eligibility for parole. (HT[1] at 1.)

23  Petitioner attended the hearing and was represented by an attorney. (HT at 1.) At the conclusion

24  of the hearing, the Board denied parole and deferred rehearing for three years. (HT at 55.)

25        Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior

26  Court. See Answer, Exhibit 1. On July 1, 2008, the petition was denied in a reasoned decision.

27

28
    _____
    [1]"HT" refers to the hearing transcript that is contained in Exhibit 1 of Respondent's Answer.

1  See Answer, Exhibit 2. Petitioner then filed a habeas petition in the California Court of Appeals,

2  Second Appellate District. See Answer, Exhibit 3. The petition was denied on August 6, 2008.

3  See Answer, Exhibit 4. On September 23, 2008, Petitioner filed a petition for writ of habeas

4  corpus in the California Supreme Court. See Answer, Exhibit 5. On May 20, 2009, the petition

5  was denied. See Answer, Exhibit 6.

6        On July 7, 2009, Petitioner filed the instant federal petition for writ of habeas corpus. The

7  petition challenges the 2007 decision of the Board of Parole Hearings denying parole. On

8  November 10, 2009, Respondent filed an answer to the petition. Petitioner filed a traverse to

9  Respondent's answer on December 3, 2009.

10                            **FACTUAL BACKGROUND**[2]

11        On September 27, 1984, Petitioner and two crime partners were involved in a gang-

12  related shooting which led to the death of Robert Stringer. A brief discussion between Petitioner

13  and his crime partners in one vehicle and the victim and others in a separate vehicle led to a

14  chase. Ultimately, the vehicle with Petitioner and his crime partners pulled into an alley where

15  the crime was committed. Petitioner later told a witness that he and another crime partner shot

16  the victim. Petitioner subsequently maintained he was not the shooter.

17        Approximately one week after the shooting, Petitioner made a gang hand-signal at rival

18  gang members near a mortuary where the victim's body was on view. Petitioner then shot at an

19  individual named Kevin Orange. He denied this shooting as well.

20                              **DISCUSSION**

21  I.     Standard of Review

22        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

23  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

24  enactment. Lindh v. Murphy, 521 U.S. 320 (1997), cert. denied, 522 U.S. 1008 (1997); Jeffries

25  v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th

26  Cir.1996), cert. denied, 520 U.S. 1107 (1997), overruled on other grounds by Lindh v. Murphy,

27

28       [2]The information is derived from the factual summary set forth in the decision of the Los Angeles County Superior Court. See Answer, Exhibit 2.

1    521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).

2    The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its

3    provisions.

4         Petitioner is in custody of the California Department of Corrections and Rehabilitation

5    pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state

6    court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because

7    he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass

8    v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v.

9    Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a

10   habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the

11   petition is not challenging his underlying state court conviction.'").

12        The instant petition is reviewed under the provisions of the Antiterrorism and Effective

13   Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63,

14   70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

15   adjudication of the claim "resulted in a decision that was contrary to, or involved an

16   unreasonable application of, clearly established Federal law, as determined by the Supreme Court

17   of the United States" or "resulted in a decision that was based on an unreasonable determination

18   of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

19   § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

20        As a threshold matter, this Court must "first decide what constitutes 'clearly established

21   Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

22   *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this

23   Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

24   of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other

25   words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or

26   principles set forth by the Supreme Court at the time the state court renders its decision." Id.

27        Finally, this Court must consider whether the state court's decision was "contrary to, or

28   involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at

72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.    Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

In this case, because the California Supreme Court summarily denied the habeas petition, this Court must "look through" that decision to the decisions below. Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991).

II.    Review of Petition

A parole release determination is not subject to all the due process protections of an

4

1   adversary proceeding. <u>Pedro v. Oregon Parole Board</u>, 825 F.2d 1396, 1398-99 (9th Cir. 1987); <u>see</u>

2   <u>also</u> <u>Greenholtz</u>, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural

3   protections that particular situations demand). "[S]ince the setting of a minimum term is not part

4   of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not

5   constitutionally mandated, even when a protected liberty interest exists." <u>Pedro</u>, 825 F.2d at

6   1399; <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole

7   board proceeding, the only procedural process to which an inmate is entitled is: 1) the inmate

8   must receive advance written notice of a hearing, <u>Pedro</u>, 825 F.2d at 1399; 2) the inmate must be

9   afforded an "opportunity to be heard," <u>Greenholtz</u>, 442 U.S. at 16; and 3) if the inmate is denied

10  parole, the inmate must be told why "he falls short of qualifying for parole." <u>Id</u>.

11          As to these procedural protections, Petitioner was provided with all that is required. He

12  was given advanced written notice of the hearing, an opportunity to submit materials for the

13  Board's consideration, an opportunity to be heard, representation by an attorney, and a written

14  decision explaining the reasons parole was denied.

15          "In <u>Superintendent v. Hill</u>, the Supreme Court held that 'revocation of good time does not

16  comport with 'the minimum requirements of procedural due process,' unless the findings of the

17  prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454

18  (1985), *quoting* <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974)." <u>Sass v. California Board of</u>

19  <u>Prison Terms</u>, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added); <u>Irons v. Carey</u>, 505 F.3d 846,

20  851 (9th Cir.2007), *quoting* <u>Hill</u>, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s]

21  clearly established that a parole board's decision deprives a prisoner of due process with respect

22  to this interest if the board's decision is not supported by 'some evidence in the record,' or is

23  'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination

24  was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and

25  regulations governing parole suitability determinations in the relevant state." <u>Irons</u>, 505 F.3d at

26  851. Here, the Court must look to California law and review the record. In reviewing the record

27  and determining whether the "some evidence" standard is met, the Court need not examine the

28  entire record, independently assess the credibility of witnesses, or re-weigh the evidence. <u>Sass</u>,

1    461 F.3d at 1128.

2         Further, the California Supreme Court more recently stated:

3    "[T]he relevant inquiry is whether the circumstances of the commitment offense, when
     considered in light of other facts in the record, are such that they continue to be predictive
4    of current dangerousness many years after the commission of the offense. This inquiry is,
     by necessity and by statutory mandate, an individualized one, and cannot be undertaken
5    simply by examining the circumstances of the crime in isolation, without consideration of
     the passage of time or the attendant changes in the inmate's psychological or mental
6    attitude.

7    In re Lawrence, 44 Cal.4th 1181, 1221 (2008).  The nature of the commitment offense "does not

8    in and of itself provide some evidence of current dangerousness to the public unless the record

9    also establishes that something in the prisoner's pre- or post-incarceration history, or his or her

10   current demeanor and mental state, indicates that the implications regarding the prisoner's

11   dangerousness that derive from his or her commission of the commitment offense remain

12   probative to the statutory determination of a continuing threat to public safety." Id. at 1214.

13        In this case, the superior court found some evidence supported the Board's finding that

14   Petitioner posed an unreasonable risk of danger to the public if released based on the following

15   factors: 1) The nature of the commitment offense; 2) Previous criminal history; and 3)

16   Institutional behavior. (HT at 50-57.)

17        First, the superior court noted that Petitioner committed the offense in an especially

18   heinous, atrocious or cruel manner.[3] The court noted that multiple victims were attacked within

19   the meaning of § 2402(c)(1)(A). Specifically, Petitioner and his crime partners shot at multiple

20   victims ultimately killing one, and in a separate incident, Petitioner shot at another individual.

21   Pursuant to § 2402(c)(1)(E), the court also noted that the gang-related motive was very trivial in

23        [3] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances
     tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous,
24   atrocious or cruel manner.  The factors to be considered include:
          (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
25        (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-
          style murder.
26        (C) The victim was abused, defiled or mutilated during or after the offense.
          (D) The offense was carried out in a manner which demonstrates an exceptionally callous
27        disregard for human suffering.
          (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
28   15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

1  relation to the murder offenses. Given the facts of the offense, the superior court's determination

2  that some evidence supported the Board's finding that the offense was especially heinous,

3  atrocious or cruel as to be a sufficient basis to deny parole was not unreasonable.

4          Next, the court found there to be some evidence that Petitioner had a substantial previous

5  criminal history per § 2402(c)(2). The record showed Petitioner had committed grand theft in

6  1981, possession of a firearm on school grounds in 1983, and possession of alcohol and firearm

7  ammunition as a juvenile in 1984. (HT 17.) The state court finding was not unreasonable.

8          Finally, the superior court determined that there was some evidence to support the finding

9  that Petitioner engaged in serious misconduct in prison pursuant to § 2402(c)(6). The court noted

10  that Petitioner had sustained ten (10) CDC-115 serious rules violations during his time in prison,

11  and the most recent took place in 2003 after his last hearing. Several of those serious violations

12  were for violent misconduct. Petitioner also sustained seventeen (17) CDC-128 counseling

13  chronos while in prison, and the last one took place in 2000 for conduct. Given the record of

14  negative behavior which often involved violence, the state court's determination that some

15  evidence supported the Board's finding that Petitioner remained a danger to the public if released

16  was not unreasonable.

17          The superior court also noted that the parole board considered several positive factors

18  favoring parole release. Petitioner had worked in a number of vocational fields and had obtained

19  his high school diploma. Nevertheless, the Board concluded Petitioner remained an unreasonable

20  risk of danger to the public in light of the circumstances of the offense, his previous record of

21  criminal conduct, and his negative institutional behavior.  The state court finding that some

22  evidence supported this determination was not unreasonable.

23          Petitioner also claims the parole board continues to rely on unchanging factors in

24  violation of his constitutional rights. While it is true that in Biggs v. Terhune, 334 F.3d 910, 916-

25  17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an

26  unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs

27  contrary to the rehabilitative goals espoused by the prison system and could result in a due

28  process violation," this is not the situation here. As discussed above, the parole board did not rely

solely on the underlying offense. The board also relied on Petitioner's escalating criminal and violent behavior which extended well into his imprisonment and included gang activity. These additional facts are not immutable and stale. In addition, at the time of the hearing Petitioner had only served 23 years of his 25 years-to-life sentence. Therefore, the concerns present in <u>Biggs</u> are not at issue here.

Petitioner has not shown that the state court resolution of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). The petition should be denied.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.       The petition for writ of habeas corpus be DENIED; and

2.       Judgment be entered in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:    April 13, 2010**                           _____/s/ Sandra M. Snyder_____
                                                                  UNITED STATES MAGISTRATE JUDGE